UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONTROLLED KINEMATICS, INC., | * |
| Plaintiff, | * |
| v. | * Civil Action No. 17-cv-11029-ADB |
| NOVANTA CORP., | * |
| Defendant. | * |

## MEMORANDUM AND ORDER DENYING MOTION TO DISMISS

BURROUGHS, D.J.

On June 2, 2017, Plaintiff Controlled Kinematics, Inc. filed suit against Defendant Novanta Corp. seeking recovery of unpaid sales commissions for services rendered. [ECF No. 1] ("Compl."). Plaintiff asserts several claims, including breach of contract and a violation of Mass. Gen. Laws Chapter 93A. Presently pending before the Court is Defendant's Motion to Dismiss Plaintiff's Chapter 93A claim. [ECF No. 9]. For the reasons set forth below, the Court DENIES Defendant's motion.

### I. FACTS ALLEGED IN THE COMPLAINT

Plaintiff, an independent sales representative for manufacturers of precision motion control solutions, is based in California. Compl. ¶¶ 1, 11. Defendant, a manufacturer of photonics and motion control components, is a Michigan corporation with its principal place of business in Massachusetts. Id. ¶ 1.

In 2000, MicroE Systems, Inc. ("MicroE"), a Massachusetts-based company that designs and manufactures precision motion control components, hired Plaintiff to serve as its independent sales agent in California. Id. ¶¶ 14–15. In 2002, Plaintiff and MicroE entered into a

written sales contract, under which Plaintiff would be paid a 10 percent commission on sales. Id. ¶ 16. Later, Defendant acquired MicroE. Id. ¶ 22.[1] Following the acquisition, Defendant continued to employ Plaintiff as an independent sales representative for Defendant's line of MicroE products pursuant to the 2002 sales contract. Id. ¶ 18. During the 12-year period from June 2002 until December 2014, Defendant repeatedly reduced the commission rate it paid Plaintiff for its services with regard to MicroE products, but without executing another written agreement with Plaintiff. Id. ¶ 23. The parties entered into negotiations in 2014 and executed a new written sales agreement in December 2014. Id. ¶¶ 25–26.

In 2001, Applimotion, Inc., a California-based company that manufactures precision motors and motion control technology, also hired Plaintiff to serve as its independent sales representative in California. Id. ¶ 20. Although Plaintiff and Applimotion did not enter into a written sales contract, Applimotion paid Plaintiff commissions on a monthly basis pursuant to an agreed-upon commission rate of 10 percent. Id. ¶ 34. Defendant acquired Applimotion in February 2015. Id. After the acquisition, Defendant continued to use Plaintiff as a sales agent for Applimotion products, and continued to pay the 10 percent commission as previously agreed by Applimotion and Plaintiff. Id. ¶ 35.

In the summer of 2015, Defendant rebranded MicroE and Applimotion products under the "Celera Motion Group" name, and informed Plaintiff that it wished to renegotiate the December 2014 agreement and lower the commission rate it paid Plaintiff on products formerly sold under the MicroE and Applimotion brands. Id. ¶ 36. In February 2016, the parties began to discuss Defendant's proposed commission rates, which Plaintiff believed were too low. Id. ¶¶ 39–40.

---

[1] It is unclear from the complaint whether Defendant acquired MicroE in 2002 or 2004. Compl. ¶¶ 15, 17, 22.

In March 2016, Celera Motion's Global Sales Director, Hitesh Shah, based in Bedford, Massachusetts [ECF No. 11 at 4], stated in an email to Plaintiff that Defendant would not pay Plaintiff its commissions for the first quarter of 2016 unless Plaintiff signed a new sales representation agreement with reduced commission rates. Compl. ¶ 41. After back-and-forth communications in May 2016 between Plaintiff in California and Shah in Massachusetts [ECF No. 11 at 4–5], Defendant paid the first quarter of 2016 commissions for Plaintiff's sales of MicroE products, but withheld the first quarter of 2016 commissions for sales of Applimotion products. Compl. ¶ 50.

On May 17, 2016, Shah wrote in a letter to Plaintiff that no sales agreement existed between Defendant and Plaintiff with respect to Applimotion products. Id. ¶ 51. Shah added that when "an acceptable sales agreement" between the parties was reached, Defendant would pay Plaintiff the commissions for the first quarter of 2016 retroactively, based on the newly-negotiated agreement. Id. ¶ 52. Shah also asserted that Plaintiff was not performing a number of administrative requirements pursuant to the parties' December 2014 agreement concerning MicroE products. Id. ¶ 53.

On June 3, 2016, Defendant sent Plaintiff two notices of termination, one for MicroE products and another for Applimotion products, each of which stated that Defendant was terminating Plaintiff as an independent sales representative "without cause" effective October 1, 2016. Id. ¶¶ 57–58. Both notices were signed by the President and General Manager of Celera Motion, Leane Sinicki, id. ¶ 57, who was based in Bedford, Massachusetts [ECF No. 11 at 5]. The MicroE termination notice indicated that the December 2014 Sales Agreement pertained to only MicroE products.[2] [ECF No. 1 ¶ 59]. The termination notice for Applimotion products

---

[2] The December 2014 Sales Agreement states that "[f]or purchase orders that [Plaintiff] has presented to [Defendant] prior to the effective date of termination, and that [Defendant] then

3

stated that no written sales contract ever existed regarding Applimotion products and that Defendant would send Plaintiff "undisputed sales commissions" on Applimotion products "consistent with the parties' past course of dealings" until the termination date, but not thereafter. Id. ¶¶ 60–62; [ECF No. 11 at 6].

Defendant allegedly did not pay Plaintiff commissions on sales of MicroE products prior to the October 1, 2016 termination date or on sales that Defendant accepted during the 12 months following the termination date, in violation of the December 2014 Agreement. Compl. ¶¶ 65–66. Additionally, Defendant did not pay Plaintiff commissions on sales of Applimotion products prior to the October 1, 2016 termination date or on sales Defendant accepted during the 12 months following the termination date. Id. ¶ 67.

In January 2017, Plaintiff contacted Defendant regarding its unpaid commissions for MicroE and Applimotion products. Id. ¶ 69. In response, on February 1, 2017, Shah asserted in an email that Defendant did not owe Plaintiff any commissions for sales of MicroE products pursuant to the December 2014 Agreement because Plaintiff had not given Defendant any Purchase Orders for the products for "likely years," and because Plaintiff did not "devote[] resources required by the Agreement to develop new business." Id. ¶¶ 71, 73. Additionally, Shah stated that Defendant did not owe Plaintiff any commissions for sales of Applimotion products because there was no written agreement concerning the sale of those products. Id. ¶ 77.

On February 10, 2017, Sinicki emailed Plaintiff and reiterated Shah's positions regarding the unpaid commissions. Id. ¶¶ 82–85. On February 16, 2017, Sinicki sent another email in which she repeated the assertion that Plaintiff was not entitled to any commissions. Id. ¶ 87.

---

accepts . . . within the twelve month period immediately following the date of termination, [Plaintiff] will be entitled to the compensation that it would have received under this Agreement if this Agreement had not been terminated . . . ." Compl. ¶ 30.

4

On June 2, 2017, Plaintiff brought this diversity action alleging Defendant's violation of the California Independent Wholesale Sales Representative Contractual Relations Act of 1990, Cal. Civil Code § 1738 (Count I); violation of Mass. Gen. Laws c. 104 §§ 7–9 (Count II); breach of contract (Count III); unjust enrichment (Count IV); and violation of Chapter 93A (Count V). [ECF No. 1]. Plaintiff asserts that Defendant engaged in "an ongoing practice to withhold commissions," and that this practice "was developed by senior Novanta officials based in Bedford, Massachusetts and implemented through letters and emails sent by the officials in Massachusetts." [ECF No. 11 at 3].

On July 21, 2017, Defendant moved to dismiss Plaintiff's Chapter 93A claim on the grounds that the Complaint "establishes that the center of gravity of the claim was not primarily and substantially within Massachusetts." [ECF No. 9].

**II.     STANDARD OF REVIEW**

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences from those facts in light most favorable to the plaintiff. U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). While detailed factual allegations are not required, to avoid dismissal a complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must include "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (internal quotations and citation omitted). The facts alleged, when taken together, must therefore be sufficient to "state a claim to relief that is plausible on its face."

A.G. ex rel. Maddox v. v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Twombly, 550 U.S. at 570).

When evaluating the sufficiency of a complaint, the Court first "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, the Court "must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal quotations and citation omitted). "Although evaluating the plausibility of a legal claim requires the reviewing court to draw on its judicial experience and common sense, the court may not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (internal quotations and citation omitted).

### III. DISCUSSION

Pursuant to Chapter 93A, "[n]o action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth." Mass. Gen. Laws ch. 93A § 11. A Chapter 93A claim may proceed if "the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." Sonoran Scanners, Inc. v. PerkinElmer, Inc., 585 F.3d 535, 546 (1st Cir. 2009) (quoting Kuwaiti Danish Computer Corp. v. Digital Equip. Co., 781 N.E.2d 787, 799 (Mass. 2003)). The center of gravity analysis examines "actionable conduct as opposed to conduct that is neither unfair nor deceptive." Pine Polly, Inc. v. Integrated Packaging Films IPF, Inc., No. CIV.A. 13-11302-NMG, 2014 WL 1203106, at *8 (D. Mass. Mar. 19, 2014).

6

Determining whether the conduct at issue occurred primarily and substantially within Massachusetts is "fact-intensive," Evergreen Partnering Grp., Inc. v. Pactiv Corp., No. CIV.A. 11-10807-RGS, 2014 WL 304070, at *4 (D. Mass. Jan. 28, 2014), but is nevertheless "a question of law," Blue Cross & Blue Shield v. AstraZeneca Pharms. LP, 582 F.3d 156, 194 (1st Cir. 2009). Some courts have determined that "due to the fact-finding process necessarily involved in evaluating the [primarily-and-substantially] issue, 'this particular ground for challenging a [Chapter] 93A claim . . . cannot be resolved on Rule 12 motions.'" Berklee Coll. of Music, Inc. v. Music Indus. Educators, Inc., 733 F. Supp. 2d 204, 213 (D. Mass. 2010) (citing Bliss Valley Props., LLC v. Eliopulos, No. 041100BLS, 2005 WL 1683749, at *6 (Mass. Super. Ct. June 2, 2005)).

The center of gravity analysis is not based on a formula "identified by any particular factor or factors" because a significant factor that exists in one case may not exist in another. Kuwaiti, 781 N.E.2d at 798–99. The court should instead make findings of fact and consider "those findings in the context of the entire § 11 claim." Id. at 799. The analysis may be guided by consideration of "where the defendant committed the deceptive acts and practices," "where the plaintiff received and acted upon the deceptive or unfair statements," and "the situs of the plaintiff's losses due to the unfair or deceptive acts or practices." Reicher v. Berkshire Life Ins. Co. of Am., No. CIV.A. 02-10868-RWZ, 2002 WL 31426758, at *2 (D. Mass. Oct. 29, 2002), aff'd, 360 F.3d 1 (1st Cir. 2004) (citations omitted). "[A]ttempts, however, to single out particular factors and then place these factors in some order of importance, are necessarily not fully satisfactory." Kuwaiti, 781 N.E.2d at 799 (citation omitted). Accordingly, courts have differed as to which factor should carry the most weight in the analysis. See, e.g., Reicher, 2002 WL 31426758 at *2 (noting that the locus of the recipient of the deception at the time of reliance

7

is "of particular import"); Spring Inv'r Servs., Inc. v. Carrington Capital Mgmt., LLC, No. CIV.A. 10-10166-FDS, 2013 WL 1703890, *12 (D. Mass. April 18, 2013) (explaining that the inquiry focuses on "conduct said to give rise to the violation; other conduct . . . may not be considered on the question").

Defendant contends that Plaintiff's claim is not centered "primarily and substantially" in Massachusetts because Plaintiff is based in California and was injured in California, notwithstanding the fact that Defendant and its senior personnel made the relevant decisions in Massachusetts and communicated those decisions from Massachusetts. Defendant argues that Bushkin Assocs., Inc. v. Raytheon Co., 473 N.E.2d 662 (Mass. 1985) controls "this general fact pattern." [ECF No. 14 at 2]. In Bushkin, the court found "no primary involvement with Massachusetts" where a New York plaintiff sought sales commissions from a Massachusetts defendant whose allegedly wrongful conduct and communications were made in Massachusetts, because the communications were "received and acted on in New York and any loss was incurred in New York." 473 N.E.2d at 672.

In addition, Defendant relies on a line of First Circuit cases "with the same general fact pattern as Bushkin." [ECF No. 14 at 3–4]. In Compagnie De Reassurance D'Ile de Fr. v. New England Reinsurance Corp., the court held that the plaintiff's claim was not "primarily and substantially" centered in Massachusetts where "the allegedly deceptive acts or practices . . . originated in Massachusetts, but . . . [were] intended to be, and [were], circulated abroad, and plaintiffs received and acted upon [them] there." 57 F.3d 56, 90 (1st Cir. 1995). In M & I Heat Transfer Prods., Ltd. v. Gorchev, the court likewise did not find the "primarily and substantially" test met where "a defendant's message . . . originated in Massachusetts but whose receipt and impact occurred centrally in another state." 141 F.3d 21, 23 (1st Cir. 1998). In contrast to the

8

present case, however, those cases were decided at the summary judgment stage, not on a motion to dismiss. Because a court does not make factual findings when ruling on a motion to dismiss, and instead must take the facts alleged in the light most favorable to the plaintiff, a motion to dismiss is generally not an "appropriate vehicle for raising the issue." Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 118 (D. Mass. 2003).

Defendant cites several cases in which the court has granted motions to dismiss, but in those cases, the complaint failed to allege any facts supporting the proposition that the defendant's deceptive conduct was at all linked to Massachusetts. See Am. Mgmt. Servs., Inc. v. George S. May Int'l Co., 933 F. Supp. 64, 67–68 (D. Mass. 1996) (granting motion to dismiss where "[t]he only wrongdoing alleged in the complaint is . . . in Illinois"); Mkt. Masters-Legal v. Parker Waichman Alonso, LLP, No. 10-CV-40119-MAP, 2011 WL 196929, at *3 (D. Mass. Jan. 20, 2011) (granting motion to dismiss where "[a] thorough review of the record and Plaintiff's pleadings reveals not a single action or transaction alleged by Plaintiff that occurred in Massachusetts"); Evergreen, 2014 WL 304070, at *4 (granting motion to dismiss where the plaintiff "fail[ed] to identify a single deceptive act or practice or 'dominant event' that is alleged to have occurred in Massachusetts").[3]

Unlike the cases cited by Defendant, Plaintiff, in the instant complaint, directly references actions that occurred in Massachusetts and communications sent from Massachusetts, and thus, Plaintiff has provided enough factual detail to survive a motion to dismiss. The Chapter 93A claim is based on the actions of Defendant's senior employees in Massachusetts, and

---

[3] Defendant also cites Bruno Int'l Ltd. v. Vicor Corp., No. CV 14-10037-DPW, 2015 WL 5447652, at *19 (D. Mass. Sept. 16, 2015), but in that case, the plaintiff did not allege that "executive decisions to engage in the alleged conduct were made at [defendant's] headquarters in Massachusetts," id., while here, the complaint indicated "an overwhelming connection" elsewhere.

9

Plaintiff alleges that the Defendant's practice of withholding commissions was developed by senior company officials based in Massachusetts and implemented through letters and emails sent from Massachusetts by these individuals. Because Plaintiff's allegations are sufficient to indicate that Defendant committed the misconduct in Massachusetts, Plaintiff has plausibly alleged that its Chapter 93A claim is centered "primarily and substantially" in Massachusetts.

### IV. CONCLUSION

Accordingly, Defendant's motion to dismiss [ECF No. 9] is <u>DENIED</u>.

**SO ORDERED.**

November 29, 2017 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE