UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CONTROLLED KINEMATICS, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 17-cv-11029-ADB |
| | * | |
| NOVANTA CORPORATION, | * | |
| | * | |
| Defendant. | * | |
| | * | |

# MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO COMPEL AND PLAINTIFF'S CROSS-MOTION FOR PROTECTIVE ORDER

BURROUGHS, D.J.

Currently pending before the Court is a discovery dispute concerning certain discovery requests that seek information relating to Plaintiff Controlled Kinematics, Inc.'s ("CKI") daily activities and interactions with Defendant Novanta Corporation's ("Novanta") competitors. For the reasons explained herein, Novanta's motion to compel [ECF No. 33] is GRANTED in part and DENIED in part, and CKI's cross-motion for a protective order [ECF No. 39] is GRANTED in part and DENIED in part.

## I. BACKGROUND

CKI is an independent sales representative for manufacturers of precision motion control solutions, such as Novanta. [ECF No. 27 ("Amended Complaint" or "Am. Compl.") ¶¶ 1, 11]. Novanta supplies photonics and motion control components to original equipment manufacturers in the medical and advanced industrial technology markets. [Id. ¶ 12]. CKI has worked as an independent sales representative for Novanta's subsidiaries, MicroE Systems, Inc. ("MicroE")

and Applimotion, Inc. ("Applimotion") and currently does work for one of Novanta's competitors, Allied Motion. [Id. ¶¶ 14–15, 20; ECF No. 39 at 1].

In 2000, MicroE hired CKI as an independent sales agent. [Am. Compl. ¶ 15]. In June 2002, CKI and MicroE executed a written sales contract in which they agreed that CKI would be paid a 10% commission on sales. [Id. ¶ 16]. Novanta acquired MicroE in 2004. [Id. ¶¶ 14, 17]. CKI continued to serve as an independent sales agent for MicroE following the acquisition. [Id. ¶ 18]. Although Novanta initially paid CKI 10% commissions pursuant to the existing contract, between the time of the acquisition and December 2014, Novanta repeatedly reduced CKI's commission rate. [Id. ¶ 23].

In December 2014, CKI and Novanta negotiated a new written sales contract. [Id. ¶¶ 25–26]. The December 2014 contract provided for a commission rate of 10% and contained the following term concerning payment of commissions following termination:

> For purchase orders that the Agent has presented to GSI[1] prior to the effective date of termination, and that GSI then accepts, in whole or substantial part, within the twelve month period immediately following the date of termination, the Agent will be entitled to the compensation that it would have received under this Agreement if this Agreement had not been terminated, specifically, but without limitation, Schedule A, provided, however, that if the Agent has been terminated for a material breach of this Agreement pursuant to Subsection 8.2, below, then the Agent will receive no compensation from GSI for orders accepted after the effective date of termination.

[Id. ¶¶ 30, 32].

In approximately 2000, CKI also started working as an independent sales agent for Applimotion, which was acquired by Novanta in 2015. [Id. ¶¶ 14, 20]. CKI did not have a written contract with Applimotion, but received 10% commissions that were paid on a monthly

---

[1] Novanta was formerly known as GSI Group, Inc. [Am. Compl. ¶ 13].

2

basis. [Id. ¶¶ 20, 34]. CKI continued to work with Applimotion following the acquisition, and Novanta paid the 10% commission rate on sales of Applimotion products. [Id. ¶ 35].

In the summer of 2015, Novanta rebranded MicroE and Applimotion products and services under the name "Celera Motion Group." [Id. ¶ 36]. Around the same time, Novanta informed CKI that it wished to renegotiate the December 2014 contract covering MicroE products and to lower the commission rate it paid. [Id.]. Contract negotiations were delayed until February 2016 and continued through May 2016, but were not successful. [Id. ¶¶ 38–56]. Novanta sought to reduce CKI's commissions from 10% to 3% and withheld commissions earned during the first quarter of 2016 on Applimotion products on the ground that no contract requiring the commissions was in effect. [Id. ¶¶ 49–51].

On June 3, 2016, Novanta informed CKI that it was being terminated "without cause" as an independent sales representative for MicroE and Applimotion products effective October 1, 2016. [Id. ¶¶ 57, 59–60]. Novanta believed that CKI was "doing essentially nothing" to earn the $1 million annual commission it had been receiving and that such a large commission was not justified based on the minimal work reported by CKI. [ECF No. 18 (Counterclaims) ¶¶ 11–13]. Novanta asserts that during 2016, CKI actively courted Novanta's competitors and set up a business to compete directly with Novanta. [Id. ¶¶ 14–15].

When CKI reached out to Novanta in 2017 regarding payment of commissions earned during the last quarter of 2016, Novanta refused to pay commissions on MicroE products based on Novanta's belief that CKI was not entitled to any commissions because all purchase orders during the quarter had been generated by Novanta personnel. [Am. Compl. ¶ 73]. Novanta also continued to take the position that CKI was not entitled to commissions on sales of Applimotion products because there was no written agreement requiring commissions to be paid. [Id. ¶ 77].

On June 2, 2017, CKI filed this lawsuit against Novanta seeking to recover sales commissions earned following the October 1, 2016 termination date. [ECF No. 1 ¶ 1 ("Complaint")]. The Complaint alleged violations of California's Independent Wholesale Sales Representative Contractual Relations Act of 1990 (Cal. Civil Code § 1738.10), violations of Massachusetts General Laws ch. 104, §§ 7–9, violations of Massachusetts General Laws ch. 93A, breach of contract, restitution, and unjust enrichment. [Id. ¶¶ 98–131]. On November 29, 2017, the Court denied a partial motion to dismiss. [ECF No. 15]. Novanta answered the complaint on December 22, 2017 and asserted counterclaims for breach of contract, restitution, and unjust enrichment. [ECF No. 18 (Counterclaims) ¶¶ 16–27]. On June 5, 2018, CKI filed the Amended Complaint and added a claim for bad faith termination. See [Am. Compl. ¶¶ 132–34].

On October 10, 2018, Novanta served its First Requests for Production and First Set of Interrogatories. [ECF No. 37-3]. CKI served responses to the Requests for Production on November 9, 2018 and to the Interrogatories on November 16, 2018. [ECF Nos. 34-1, 34-2]. On December 13, 2018, CKI provided a supplement to its November 9, 2018 Responses to Novanta's First Set of Requests for Production. [ECF No. 34-3].

On December 18, 2018, Novanta filed a motion to compel certain discovery responses. [ECF No. 33]. On January 11, 2019, CKI opposed the motion to compel and filed a cross-motion for a protective order. [ECF Nos. 37, 39]. Novanta opposed the cross-motion for a protective order on January 25, 2019 and filed a reply brief in support of its motion to compel on February 1, 2019. [ECF Nos. 42, 43].

## II.    MOTION TO COMPEL

Pursuant to Federal Rule of Civil Procedure 26(b), parties are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and

proportional to the needs of the case." On a motion to compel, "[t]he party seeking information in discovery over an adversary's objection has the burden of showing its relevance." Johansen v. Liberty Mut. Grp., Inc., No. 15-cv-12920-ADB, 2017 WL 6045419, at *1 (D. Mass. Dec. 6, 2017) (citing TG Plastics Trading, Co. v. Toray Plastics, No. 09-cv-336S, 2010 WL 936221, at *2 (D.R.I. Mar. 12, 2010)); see Karl v. Bizar, No. 2:09-cv-00034, 2009 WL 3418676, at *3 (S.D. Ohio Oct. 19, 2009) ("The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant."). Once a showing of relevance is made, the party opposing disclosure bears the burden of showing that the requested discovery is improper. See Aronstein v. Mass. Mut. Life Ins. Co., No. 15-cv-12864-MGM, 2017 WL 2818993, at *2 (D. Mass. June 29, 2017).

"District courts exercise broad discretion to manage discovery matters" and "to tailor discovery narrowly." Heidelberg Americas, Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003); Primarque Prod. Co. v. Williams W. & Witt's Prod. Co., No. 15-cv-30067-TSH, 2016 WL 6090715, at *2 (D. Mass. Oct. 18, 2016). When exercising this discretion, courts assess disputed discovery requests in light of the proportionality considerations articulated in Rule 26(b)(1), including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." See Fed. R. Civ. P. 26(b)(1); Sustainable Sourcing, LLC v. Brandstorm, Inc., No. 12-cv-30093-MAP, 2017 WL 217747, at *2 (D. Mass. Jan. 18, 2017) ("concepts of relevance and proportionality dictate limits on the discovery to which Plaintiff is entitled").

Novanta seeks to compel discovery responses from CKI on two topics: (i) the activities of CKI's employees and (ii) CKI's work, and preparation to work, for Novanta's competitors. [ECF No. 34 at 5]. CKI has cross-moved for a protective order barring discovery of CKI's work as a sales representative for any company other than Novanta and its predecessors. [ECF No. 39].

### A. Activities of CKI, Its Principals, and Its Employees (Novanta's Request for Production No. 26)

Novanta intends to defend this lawsuit by demonstrating that CKI did not earn post-termination sales and therefore is not entitled to any post-termination commissions. [ECF No. 34 at 7]. In support of this anticipated defense, Novanta sought to discover the sales activities of CKI and its employees during 2015 and 2016 in part through Request for Production No. 26 ("RFP No. 26"), which requests: "[a]ll documents showing what CKI and its principals and employees were doing on a daily basis in 2015 and 2016, including, without limitation, calendars, date books and meeting notices." [ECF No. 34-2 at 12]. CKI objected to RFP No. 26 as "vague, overbroad, and seek[ing] information not reasonably calculated to lead to the discovery of admissible evidence," but agreed to produce "calendars and datebooks [sic] entries concerning efforts by CKI, its principals and employees, to sell Novanta products." [Id.].

Novanta contends that the information sought by RFP No. 26 is "directly relevant to [its] defense that CKI failed to perform its contractual obligations" under the December 2014 contract concerning sales of MicroE products, which required that CKI "diligently and actively promote, sell, support, install, and maintain" MicroE products. [ECF No. 34 at 7–8]. Novanta further asserts that documents after October 1, 2016 are relevant because post-termination activities and communications could be evidence of what occurred pre-termination. [ECF No. 43 at 5].

6

CKI disputes the relevance of documents responsive to RFP No. 26. [ECF No. 37 at 8]. CKI argues that the information sought by RFP No. 26 is not relevant because Novanta's proposed defense is only based on CKI's failure to conduct Novanta-specific activities. [Id.]. CKI also asserts that RFP No. 26 is impermissibly broad because it would include information related to activities outside of work, such as family events or vacation time, and to work performed for other companies, neither of which CKI believes is relevant to the instant action. [Id. at 7–8]. CKI also claims that RFP No. 26 is harassing because it seeks to disrupt CKI's relationship with other companies that it represents. [Id. at 10].

The Court finds that RFP No. 26 seeks information relevant to Novanta's counterclaims for breach of contract, restitution, and unjust enrichment, but, as written, is overly broad.[2] RFP No. 26 is nearly limitless because any company document and all of the phone and computer records of CKI principals and employees could be interpreted as "showing what CKI and its principals and employees were doing on a daily basis." Further, documents supporting what CKI, its principals, and its employees were doing outside of business hours is well beyond the scope of Novanta's counterclaims. The Court's concern of overbreadth is not alleviated by Novanta's statement that the "parties have discussed agreeing to search terms to narrow the scope of electronically stored information the parties must review," which sheds no light on how the universe of documents potentially responsive to RFP No. 26 could reasonably be narrowed given Novanta's expansive view of what RFP No. 26 seeks. See [ECF No. 34 at 10].

---

[2] The Court rejects CKI's argument that Novanta is precluded from asserting a breach of contract counterclaim against CKI after terminating CKI without cause. See [ECF No. 27 at 7–8]. When it filed its counterclaims, Novanta implicitly represented to the Court that the counterclaims were "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." See Fed. R. Civ. P. 11(b)(1). Should it come to light that Novanta filed its counterclaims with the intention of using them as a vehicle only to expand access to CKI's, and, in turn, competitors', documents that would otherwise not be subject to discovery, the Court will consider appropriate sanctions at that time.

Accordingly, the Court grants in part and denies in part Novanta's motion to compel a request to RFP No. 26. CKI has already agreed to produce "calendars and datebooks [sic] entries concerning efforts by CKI, its principals and employees, to sell Novanta products." [ECF No. 34-2 at 12]. CKI shall also produce within 30 days, or by agreement of the parties, documents supporting CKI's efforts to sell Novanta products in 2015 and 2016 that have not already been produced in response to Novanta's Requests for Production Nos. 6 and 15.[3]

**B.    CKI's Work for Novanta's Competitors (Novanta's Requests for Production Nos. 10, 11; Interrogatories No. 7, 10)[4]**

During the course of this litigation, Novanta became aware that CKI currently works for Allied Motion, one of Novanta's competitors. [ECF No. 34 at 2]. One of CKI's principals admits that he spoke with Allied Motion in early 2016 to explore a future sales representative arrangement but contends that CKI did not sign a sales representative agreement with Allied Motion until December 21, 2016 and did not sell Allied Motion products prior to that date. [ECF No. 38 ("Adams Aff.") ¶¶ 14–15].

1.    <u>Amended Discovery Responses</u>

As an initial matter, Novanta argues that any objections contained in CKI's supplemental responses to the Requests for Production but not in its initial responses were waived under Local Rule 34.1, which provides that "[a]ny ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be deemed waived."

---

[3] Request for Production No. 6 requested "[a]ll documents concerning any efforts made by CKI to sell, promote or support any product of Novanta, Applimotion and/or MicroE." [ECF No. 34-2 at 4]. Request for Production No. 15 requested "[a]ll documents concerning any report by CKI to Novanta, Applimotion or MicroE concerning its efforts to promote, sell, support, install and maintain any product of Novanta, Applimotion or MicroE . . . ." [<u>Id.</u> at 7].

[4] Novanta initially sought to compel a response to Interrogatory No. 7, but has since withdrawn that request. [ECF No. 43 at 5 n.1].

LR, D. Mass 34.1. CKI requests that it not be precluded from amending its response because it "made its position known quickly" and Novanta "was not hindered or delayed as a result of the initial omission." [ECF No. 37 at 11 n.3].

The Court is obligated to enforce Local Rule 34.1 and deem waived any objections not included in CKI's initial response. The Court, however, remains mindful of its broad discretion to control the discovery process, including its power to *sua sponte* limit the extent of discovery when proposed discovery is outside of the scope allowed by Rule 26(b)(1). See Fed. R. Civ. P. 26(b)(2)(C).

### 2. Novanta's Request for Production No. 10

Request for Production No. 10 ("RFP No. 10") seeks:

> All documents concerning communications between CKI and any customer or prospective customer of Novanta, Applimotion or MicroE at any time on or after June 3, 2016, including without limitation communications concerning (i) Novanta or any Novanta product, (ii) Applimotion or any Applimotion product, (iii) MicroE or any MicroE product and (iv) Allied Motion.

[ECF No. 34-2 at 5]. CKI agreed to produce all responsive non-privileged documents except for documents related to Allied Motion. [Id. at 5–6]. As concerns Allied Motion, CKI objected to the request as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and stated that the request was intended to be harassing and to interfere in CKI's contractual relations. [Id. at 6].

The Court finds that RFP No. 10 seeks some relevant information but is overbroad. RFP No. 10 seeks documents concerning CKI's conversations with customers about the relevant Novanta products, and documents produced in response may shed light on the work CKI was doing for Novanta in its final quarter and on post-termination sales. This information is relevant both to CKI's affirmative claims and Novanta's breach of contract and unjust enrichment counterclaims.

9

The portion of RFP No. 10 that requests communications between CKI and customers or prospective customers of Novanta concerning Allied Motion is, however, not relevant. Novanta contends that documents related to Allied Motion are relevant to: (i) assessing whether CKI was complying with its obligation to "diligently and actively promote, sell, support, install and maintain" MicroE products and (ii) assessing whether CKI complied with any restriction on representing competitors of Applimotion or "any requisite minimal level of efforts." [ECF No. 34 at 13]. The fact that Novanta is contesting how CKI spent its time while earning commissions does not permit Novanta to seek discovery on everything CKI was doing during that time. Whether CKI communicated with customers or prospective customers about Allied Motion during the last quarter of its work for Novanta is not probative of whether it "diligently" or "actively" promoted or sold MicroE or Applimotion products during the same time.

RFP No. 10 is also overbroad because it is not time-restricted. As-written, the request seeks documents after June 3, 2016, which is the date on which Novanta notified CKI that it would be terminated, but does not specify an end date. The appropriate end date for this request is December 31, 2016, which is the last date of the quarter in which post-termination sales are contested.

The Court grants in part and denies in part the motion to compel a response to RFP No. 10. CKI shall produce within 30 days, or by agreement of the parties, all documents concerning communications between CKI and any customer or prospective customer of Novanta, Applimotion or MicroE, between June 3, 2016 and December 31, 2016, including without limitation communications concerning (i) Novanta or any Novanta product, (ii) Applimotion or any Applimotion product, and (iii) MicroE or any MicroE product.

### 3. Novanta's Request for Production No. 11

Novanta's Request for Production No. 11 ("RFP No. 11") requests "[a]ll documents concerning communications between CKI and Allied Motion concerning CKI serving as sales distributor or sales agent for Allied Motion." [ECF No. 34-2 at 6]. CKI's objections to RFP No. 11 are the same as its objections to RFP No. 10. [Id.].

The Court finds that RFP No. 11 seeks documents that are of some limited relevance to the counterclaims asserted but is overbroad. "Rule 26 contemplates liberal discovery and a broad concept of relevance," tempered by the proportionality and practical considerations outlined in Rule 26(b). In re New England Compounding Pharmacy, Inc. Prod. Liab. Litig., No. 13-md-2419-RWZ, 2015 WL 13715296, at *1 (D. Mass. Nov. 6, 2015) (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). Here, information about CKI's work for Allied Motion may be relevant to determining whether CKI upheld its duties under the contract regarding sales of MicroE products and under common law regarding sales of Applimotion products. The time period of RFP No. 11 as-written contains no time constraints and is therefore overbroad. As above, the Court will restrict the request to dates falling before December 31, 2016. The Court will also limit the request to dates falling after January 1, 2016 because communications before January 1, 2016, if any, have declining relevance and a smaller time period for production imposes a lesser burden on CKI.

Consistent with the above parameters, CKI shall within 30 days, or by agreement of the parties, identify all communications between, on the one hand, CKI or any agent or employee of CKI and, on the other hand, Allied Motion or any employee or agent of Allied Motion concerning any agreement or prospective agreement between CKI and Allied Motion occurring between January 1, 2016 and December 31, 2016.

4. Novanta's Interrogatory No. 10

Novanta's Interrogatory No. 10 asks CKI to "[i]dentify all communications between, on the one hand, CKI or any agent or employee of CKI and, on the other hand, Allied Motion or any employee or agent of Allied Motion concerning any agreement or prospective agreement between CKI and Allied Motion." [ECF No. 34-1 at 15]. CKI objected to Interrogatory No. 10 as irrelevant, not proportional, and intended to harass and interfere with CKI's contractual relations. [Id.]. Consistent with its ruling on RFP No. 11, and for substantially the same reasons as articulated supra, the Court concludes that Interrogatory No. 10 is of some limited relevance to the counterclaims alleged in this action but is overbroad. Accordingly, the Court grants the motion to compel a response to Interrogatory No. 10. CKI shall within 30 days, or by agreement of the parties, identify all communications between, on the one hand, CKI or any agent or employee of CKI and, on the other hand, Allied Motion or any employee or agent of Allied Motion concerning any agreement or prospective agreement between CKI and Allied Motion occurring between January 1, 2016 and December 31, 2016.

## III. MOTION FOR PROTECTIVE ORDER

The Court has "'broad discretion' to decide 'when a protective order is appropriate and what degree of protection is required.'" Poliquin v. Garden Way, Inc., 989 F.2d 527, 532 (1st Cir. 1993) (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984)). Under Federal Rule of Civil Procedure 26(c)(1), a court may limit discovery as to certain matters in order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." In addition, under Federal Rule of Civil Procedure 26(b)(2)(C), a court may "limit the frequency or extent of discovery" if it finds that "the discovery sought is unreasonably cumulative or duplicative, or can

be obtained from some other source that is more convenient, less burdensome, or less expensive."[5]

CKI has cross-moved for a protective order requiring Novanta to withdraw its document and deposition subpoenas directed to Allied Motion Technologies.[6] [ECF No. 39]. In addition to the arguments about relevance, proportionality, and harassment presented in support of its objection to requests for production and interrogatories about Allied Motion, CKI also contends that the discovery Novanta seeks from Allied Motion is unnecessarily cumulative because it is

---

[5] CKI's cross-motion for a protective order may also be construed as a motion to quash or modify a non-party subpoena under Federal Rule of Civil Procedure 45. See [ECF No. 37 at 17–20]. Parties have standing to object to subpoenas issued to non-parties where the information sought by the subpoena implicates a personal right or privilege of the party. See Sec. & Exch. Comm'n v. Present, No. 14-cv-14692-LTS, 2016 WL 10998438, at *3 (D. Mass. Mar. 11, 2016) ("A party has standing to quash a subpoena served on a non-party only if he has a personal right or privilege with respect to the requested information."); Enargy Power (Shenzhen) Co. v. Xioalong Wang, No. 13-cv-11348-DJC, 2014 WL 2048416, at *2 & n.4 (D. Mass. May 16, 2014) (same). Although this requirement "applies with essentially the same force" to motions for protective orders, a party also may move for a protective order regardless of whether it seeks to prevent disclosure by it or a non-party "as long as the moving party can tie the protected information to an interest listed in [Rule 26] such as annoyance, embarrassment, etc." Accusoft Corp. v. Quest Diagnostics, Inc., No. 12-cv-40007-FDS, 2012 WL 1358662, at *10 (D. Mass. Apr. 18, 2012). Furthermore, a court may act *sua sponte* under Rule 26(b) to allow the relief sought by the party contesting the subpoena even if the party lacked standing to do so on its own. Bingham v. Supervalu Inc., No. 13-cv-11690, 2014 WL 12792989, at *3 (D. Mass. July 11, 2014) ("At any rate, upon a finding that the information sought is duplicative, overly burdensome to produce, or irrelevant, a court may effect the relief sought by a party contesting a subpoena even if the moving party lacks standing to do so on its own behalf."), objections overruled, No. 13-cv-11690-IT, 2014 WL 5426955 (D. Mass. Oct. 24, 2014). Accordingly, because the Court concludes that it may proceed under Rule 26, it is unnecessary for it to address the question of standing under Rule 45. See Green v. Cosby, Nos. 3:14-cv-30211-MGM, 3:16-mc-93027-MGM, 2017 WL 1377593, at *2–3 (D. Mass. Apr. 11, 2017) (finding Rule 45 standing analysis unnecessary where motion to quash could be adjudicated under Rule 26).

[6] Non-party Allied Motion served objections to the subpoenas on November 19, 2018. [ECF No. 37-2 at 2]. Allied Motion objected to both subpoenas on the grounds of improper service. [Id.]. Allied Motion further objected to the document subpoena as unduly burdensome, outside the scope of discovery, and disproportional to the needs of the case and claimed that it sought proprietary business information or information protected by attorney-client privilege or confidentiality agreements. [Id. at 2–3].

"substantially identical to the document requests and interrogatories directed at CKI concerning its relationship with Allied Motion . . . ." [ECF No. 37 at 20]. Novanta asserts that (i) the subpoenas do not seek cumulative or duplicative information because testamentary evidence is distinct from documentary evidence, (ii) Allied Motion's perspective on its relationship with CKI is likely to be different from CKI's, and (iii) CKI has not yet produced any documents related to Allied Motion. See [ECF No. 42 at 2–3].

As described supra, the Court finds that although CKI's relationship with Allied Motion is of only limited relevance to the counterclaims at issue in this case, it is within the scope of discovery permitted by Rule 26. In light of its ruling on the motion to compel directing CKI to respond to discovery requests relating to its relationship with Allied Motion, the Court concludes that the subpoenas seek some discovery that is unreasonably duplicative and that can be obtained from CKI in a more convenient and less burdensome way. See Fed. R. Civ. P. 26(b)(2)(C)(i). Accordingly, Novanta's subpoenas to Allied Motion are refined as described infra in Sections III.A. and III.B., CKI shall produce non-privileged documents responsive to the modified document subpoena within 30 days, or by agreement of the parties, and the parties shall identify a mutually-agreeable time for the deposition of Allied Motion.

   A.   **Document Subpoena to Allied Motion**

The Court modifies the Requests for Production in the Document Subpoena to Allied Motion [ECF No. 39-1] in the following ways. Requests for Production Nos. 2 and 5 are struck from the subpoena.[7] Requests for Production Nos. 1, 3, and 4 are confined to communications between January 1, 2016 and December 31, 2016:

---

[7] Request for Production No. 2 sought "All communications with CKI concerning any third party identified or described as a customer of Novanta, Applimotion or MicroE, including without limitation ISI, Stryker and LAM." Request for Production No. 5 sought "To the extent not

1. All communications with CKI concerning Novanta, Applimotion or MicroE or any product of Novanta, Applimotion or MicroE between January 1, 2016 and December 31, 2016.

3. All communications with CKI concerning any decision by Allied Motion to enter into any agreement with CKI between January 1, 2016 and December 31, 2016.

4. All communications with CKI concerning the possibility, negotiation, drafting or signing of any agreement between Allied Motion and CKI between January 1, 2016 and December 31, 2016.

**B.     30(b)(6) Deposition Subpoena to Allied Motion**

The Court modifies the areas of inquiry listed in the 30(b)(6) Deposition Subpoena to Allied Motion [ECF No. 39-2] in the following ways. Areas of Inquiry Nos. 4 and 7 are struck as overbroad and outside the scope of this action.[8] Areas of Inquiry Nos. 1, 2, 3, 5, and 6 are confined to the time period of January 1, 2016 and December 31, 2016, and Area of Inquiry No. 8 is unchanged:

1. Allied Motion's relationship with CKI between January 1, 2016 and December 31, 2016.

2. Any agreements between Allied Motion and CKI between January 1, 2016 and December 31, 2016.

3. Communications with CKI concerning Novanta, Applimotion or MicroE or any product of Novanta, Applimotion or MicroE between January 1, 2016 and December 31, 2016.

5. Communications with CKI concerning any decision by Allied Motion to enter into any agreement with CKI between January 1, 2016 and December 31, 2016.

6. Communications with CKI concerning the possibility, negotiation, drafting or signing of any agreement between Allied Motion and CKI between January 1, 2016 and December 31, 2016.

---

already requested, all communications with CKI at any time between January 1, 2016 and December 31, 2016." [ECF No. 39-1 at 5].

[8] Area of Inquiry 4 was "Communications with CKI concerning any third party identified or described as a customer of Novanta, Applimotion or MicroE, including without limitation ISI, Stryker and LAM." [ECF No. 39-2 at 6]. Area of Inquiry 7 was "Communications with CKI at any time between January 1, 2016 and December 31, 2016." [Id. at 7].

15

8. Documents produced by Allied Motion in response to the Document Subpoena, including without limitation Allied Motion's efforts to search for and produce documents and the authenticity of such documents.

## IV. CONCLUSION

Accordingly, Novanta's motion to compel [ECF No. 33] is <u>GRANTED</u> in part and <u>DENIED</u> in part, and CKI's cross-motion for a protective order [ECF No. 39] is <u>GRANTED</u> in part and <u>DENIED</u> in part.

**SO ORDERED.**

July 15, 2019

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE